IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATLANTIC RESEARCH MARKETING SYSTEMS, INC., <br><br> Plaintiff, <br> v. <br><br> STEPHEN P. TROY, JR. AND TROY INDUSTRIES, INC., <br><br> Defendants. | Civil Action No. 07-cv-11576 (PBS) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REMITTITUR

The defendants, Stephen Troy, Jr. and Troy Industries, Inc. (collectively "Troy"), seek remittitur because the verdict is against the weight of the evidence and is disproportionate to the harm that plaintiff allegedly sustained. As we show below, the verdict should be reduced to no greater than $479,035.16.

### I. BACKGROUND

The Jury awarded the plaintiff, Atlantic Research Marketing Systems, Inc. ("ARMS") $1,813,465 as disgorgement for the misappropriation of trade secrets and breach of fiduciary duty. The Court instructed the Jury that damages awarded to ARMS could be the greater of the disgorgement of Troy's net profits, or ARMS's lost profits, but not both. The Court also instructed the Jury that damages were limited to the period before December 31, 2006, which is the publication date of ARMS's patent. By stipulation, the damage period ended December 31, 2006.

ARMS introduced evidence that showed Troy sold 9,523[1] units to Smith & Wesson from January 1, 2004 through and including 2007. See Trial Exhibit 89, copy attached as Exhibit A. Troy introduced unrebutted evidence that its costs to manufacture were $45 per unit. The price per unit Smith & Wesson paid Troy was between $76 and $87, or an average sale price of $81.50. Thus, with an average cost to manufacture of $45 per unit, the actual profit on the Smith & Wesson sales was $36.50 per unit.

It is undisputed that 4,195 of the 9,523 units were sold *after* the damage period. See Exhibit A. As a result these units should be excluded from the damage calculation. Even plaintiffs' counsel in stipulating to the amount actually sold during the damage period recognized the enormity of the calculation: "About 5,000 units, so it's a million dollars. It's a big nut." See Day 4, p. 82, copy attached as Exhibit B.

ARMS also introduced records that showed Troy sold 1,687 units to entities other than Smith & Wesson through the end of 2006. See Trial Exhibit No. 71, copy attached as Exhibit C. The average sale price of these units was $213.68. With a cost to manufacture of $45, the average profit margin on these units was $168.68.

The total number of Smith & Wesson and non-Smith & Wesson sales was 11,210, which includes the 4,195 units sold after the damage period.

ARMS hired a damages witness ("Damages Witness") to proffer a theory of disgorgement damages. The Damages Witness was allowed to calculate disgorgement damages at the profit rate of $200 per unit based on the Court's equitable estoppel ruling, even though the average profit margin on the Smith & Wesson units was $36.50, and the average profit margin on the non-Smith & Wesson units was $168.68. See Exhibit C.

---

[1] Troy contends that these units should not have been included in the damage calculation at all, since the units sold to Smith & Wesson were not comparable to any of the ARMS' products.

2

The Damages Witness was allowed to testify to a reasonable degree of accounting certainty that Troy earned a profit of $2,242,000 simply by multiplying the number 11,210 by $200. She did this by presenting to the jury that she reviewed Troy documents that themselves show sales prices of between $76 and $87 per unit for the Smith & Wesson units and average sales prices of $168.68 per unit for the non-Smith & Wesson units. Yet, as the Court stated at trial, "You can't possibly get a $200 profit on an $87 price." See Exhibit D.

That calculation was not to any degree of accounting certainty. Rather, it was based on the Court's equitable estoppel ruling but it was given the imprimatur of an actual expert calculation. That calculation did not reflect Troy's profit nor did it reflect any perceived harm to ARMS. The Jury's award of $1,813,465, as a result, is grossly excessive, inordinate, shocking to the conscience and so high that it should not stand.

Troy's *actual* total profit margin on the sales, excluding the 4,195 Smith & Wesson units sold after the damage period, is $479,035.16 calculated as follows: (5,328 Smith & Wesson units x $36.50 = $194,472) plus (1,687 non-Smith & Wesson sales x $168.68 = $284,536.16).

The jury's calculation is also against the weight of the evidence. The likely jury formula is the following: $2,242,000 - $425,535 = $1,813,465. The figure of $425,535 was reached by multiplying the $45 cost to manufacture by the 9,523 Smith & Wesson units. The jury did not deduct from the non-Smith & Wesson sales the $45 cost to manufacture.[2] If they did, the verdict would be reduced by $75,915, for a jury verdict of $1,737,550. Even if they did, this result still would not be reflective of Troy's actual profit.

---

[2]Profit already includes the cost to manufacture.

3

Moreover, even at the $200 level, the problem with the jury calculation is it included the 4,195 units of the 2007 Smith & Wesson sales, when the damages cutoff was December 31, 2006.

## II.   ARGUMENT

### 1.   STANDARD OF REVIEW

This Court may order a remittitur for a verdict that is against the weight of the evidence. Catullo v. Metzner, 834 F.2d 1075, 1082 (1st Cir. 1987). Remittitur may also be ordered if the jury's verdict "is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." Smith v. Kmart Corp., 177 F.3d 19, 29-30 (1st Cir. 1999). The Court should either grant remittitur or grant a new trial on the issue of damages. Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 14 (1st Cir. 2004); First Act Inc. v. Brook Mays Music Co., Inc., 429 F. Supp. 2d 429, 437 (D. Mass. 2006) (granting remittitur where damage award "does not evince a rational appraisal of damages based on the evidence adduced at trial"). The Court should decrease the verdict to $479,035.16, or grant a new trial on damages. Clark v. Taylor, 710 F.2d 4, 13 (1st Cir.1983).

### 2.   THE JURY AWARD IS BASED UPON AN INCORRECT ACCOUNTING OF UNITS SOLD

The Jury award improperly included 4,195 handguards sold after the December 31, 2006 damages cutoff date. The Smith & Wesson purchase orders—introduced by ARMS at Trial as Exhibit No. 89—clearly state that delivery of 4,195 handguards was not made until after the December 31, 2006 damages cutoff date. The Plaintiff is not entitled to recover disgorgement damages based upon these 4,195 units because there can

be no sale without the physical delivery of goods.[3] Determining the total number of sales during the damage period was the entire point of the stipulation the Court directed the parties to enter into.

Even excluding the 4,195 units from the jury award reduces the verdict by $839,000 ($4,195 x 4,200).

### 4. THE JURY AWARD DOES NOT REFLECT THE ACTUAL PROFIT TROY EARNED

Remittitur is necessary to correct the award which is "plainly in excess of that which is properly supported by the evidence." Notinger v. Brown, 2008 WL 4526249 (D. N.H. 2008). Ultimately, "damages are meant to put the plaintiff in the economic position he would have occupied but for [Defendants' actions]." Kolb v. Goldring, Inc., 694 F.2d 869, 872 (1st Cir. 1982). Because the judgment award of $1,813,465 is grossly disproportionate to the actual profits Troy gained, this Court should enter an order of remittitur in the amount of no greater than $479,035.16, or grant a new trial on damages.

### III. CONCLUSION

For these reasons, Troy respectfully requests that this honorable Court grant its Motion for Remittitur, or grant a new trial on damages.

---

[3] For instance, the Uniform Commercial Code, embodied by Massachusetts General Laws, Chapter 106, provides that: "a 'sale' consists in *the passing of title* from the seller to the buyer for a price." M.G.L. c. 106 § 2-106 (emphasis added). This Statute specifically references § 2-401, which states: "title passes to the buyer at the time and place at which the seller completes performance with reference to *the physical delivery of the goods*." M.G.L. c. 106 § 2-401(2) (emphasis added). According to Massachusetts law, no sale exists until the seller has physically delivered the goods.

5

                Respectfully submitted,

                DONOVAN HATEM, LLP

                /s/ Damian R. LaPlaca
                Damian R. LaPlaca (BBO No. 55139)
                dlaplaca@donovanhatem.com
                Two Seaport Lane
                Boston, MA 02210
                Telephone:  (617) 406-4500
                Facsimile:   (617) 406-4501

                *Attorneys for Defendants, Troy Industries, Inc. and Stephen P. Troy*

                LANDO & ANASTASI, LLP

                /s/ Thomas P. McNulty
                Thomas P. McNulty (BBO No. 654564)
                tmcnulty@ll-a.com
                Ann Lamport Hammitte (BBO No. 553263)
                ahammitte@ll-a.com
                Riverfront Office Park
                One Main Street, 11th Floor
                Cambridge, MA 02142
                Telephone:  (617) 395-7000
                Facsimile:   (617) 395-7070

Dated: January 29, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing ***Memorandum of Law in Support of Motion for Remittitur*** was filed through the ECF system and will be sent electronically to the registered participants, including those persons listed below, this 29th day of January, 2010:

Paul J. Hayes, Esquire
Paul J. Cronin, Esquire
Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111

Thomas P. McNulty, Esquire
Ann Lamport Hammitte, Esquire
Lando & Anastasi, LLP
Riverfront Office Park
One Main Street, 11th Floor
Cambridge, MA 02142

/s/ Damian R. LaPlaca

24914.5 // 01243119.DOC